OPINION
On April 10, 1997, the Stark County Grand Jury indicted appellant, Dennis Williams, on one count of aggravated murder with a firearm specification in violation of R.C. 2903.01. Said charge arose from the shooting death of appellant's wife, Shelly Williams.
A jury trial commenced on June 3, 1997. The jury found appellant guilty of the lesser included offense of murder with a firearm specification. By judgment entry filed June 13, 1997, the trial court sentenced appellant to an indefinite term of fifteen years to life and a three year definite term for the firearm specification, to be served consecutively.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT REFUSED TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER.
II
 THE APPELLANTS DUE PROCESS RIGHTS WERE VIOLATED AS A RESULT OF PROSECUTORIAL MISCONDUCT.
 I
Appellant claims the trial court erred in not instructing the jury on voluntary and involuntary manslaughter. We disagree.
In his brief at 6-7, appellant argues the following evidence supported an instruction on voluntary manslaughter:
 (1) the defendant and the victim had a tumultuous relationship; (2) the victim on the night in question was being aggressive and flirtatious with a male stripper; (3) the victim grabbed the rear end of the male dancer; (4) the victim refused to go home that evening with her husband but instead chose to go sleep at her single girlfriend's house who was also a stripper; (5) the defendant and the victim spoke by phone, and the victim refused to confirm that she and her girlfriend were alone; (6) the defendant believed that the victim was hiding something from him which he believed was possibly that she was having contact with the father of her son who was supposed to be released from jail; (7) the defendant was convinced that the two women had men in the apartment; (8) when the defendant arrived at Jeanette's apartment in the early morning hours, lights were on which led him to believed they were up `partying' with men; (9) when the defendant went into the apartment both the victim and her girlfriend were scantily dressed and his wife was wearing a t-shirt which was not hers; (10) the defendant scoured the apartment for men; and (11) the victim smiled at him when he demanded to know where the men were.
R.C. 2903.03 governs voluntary manslaughter and states as follows:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.
In State v. Rhodes (1992), 63 Ohio St.3d 613, syllabus, the Supreme Court of Ohio held as follows:
 A defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder.
Although the evidence enumerated by appellant might arguably put someone into a sudden fit of rage, there is no evidence of any provocation by Mrs. Williams sufficient to incite the use of deadly force.
Prior to the murder, around 11:00 P.M., appellant, Mrs. Williams and one Jeanette Tinskey were at the West End Tavern wherein male dancers were performing. Appellant became angry with Mrs. Williams after Mrs. Williams grabbed "a dancer's butt." Vol. II T. at 84. The three left the tavern and appellant argued with Mrs. Williams during the car ride home. Id. at 88. Upon arriving at home, Mrs. Williams left with Ms. Tinskey to go to Ms. Tinskey's home. Id. at 89. Mrs. Williams called appellant and told him she was staying with Ms. Tinskey for the night because "I don't want to fight and argue with you; you know, I'm here and I love you." Id. at 92.
At approximately 3:00 A.M., appellant arrived at Ms. Tinskey's apartment with a gun in his hand and woke up Mrs. Williams by grabbing her by the hair. Id. at 109. Appellant was angry and began screaming at Mrs. Williams. Id. at 110. Appellant grabbed Mrs. Williams and knocked her over to the wall by the couch and began kicking her. Id. at 110-111. Mrs. Williams did not respond to appellant's yelling although she did ask appellant to stop. Id. at 110, 112. Appellant continued ranting saying "if you, you guys got any faggot mother fuckers in here * * * I'll kill them." Id. at 115. Appellant and Mrs. Williams ended up in the kitchen wherein appellant stood in front of Mrs. Williams. Id. at 117. Mrs. Williams asked appellant to talk to her and tell her what she did. Id. at 118. Thereafter, appellant shot Mrs. Williams. Id. at 119-120.
There is no evidence of any provocation by Mrs. Williams which would justify the use of deadly force. Mrs. Williams was passive to appellant's beatings and threats as he berated her for her actions at the tavern and his fantasies about what was going on at Ms. Tinskey's apartment. Before appellant ever knew how Mrs. Williams was dressed in the apartment (scantily clad), appellant came armed with a gun. Mrs. Williams did not add fuel to appellant's rage that night, but was passive.
From the evidence presented, we find no reason for the trial court to have charged on voluntary manslaughter.
R.C. 2903.94 governs involuntary manslaughter and states as follows:
 (A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
 (B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor.
Appellant pulled the trigger that caused Mrs. Williams's death. There was no other felony possible other than aggravated murder and murder under the facts presented. It would have been incorrect to charge on involuntary manslaughter.
Assignment of Error I is denied.
 II
Appellant claims the trial court erred in denying his motion for a mistrial due to prosecutorial misconduct. We disagree.
The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168.
Appellant claims the following statement made by the prosecutor during defense counsel's closing argument was improper and prejudicial:
 [Defense Counsel] When we started this case, the prosecution told you that the indictment for was one — the indictment was one for aggravated murder and now you hear that well, if you cannot prove or if the prosecution has not proven prior calculation and design, that you can consider another charge.
 MR. MASTRIACOVO: Objection, Your honor; he asked for that instruction.
Vol. III T. at 221.
The trial court denied appellant's motion for mistrial but instructed the jury as follows:
 THE COURT: Ladies and gentlemen, in that last exchange between the defense and the State of Ohio I'm going to instruct you to disregard it. It is the Court's decision as to what charge I will read to you and so it is my decision as to the law that I read to you, and I have read the law to you. How it came to be that I read it is not of importance to you; that's my area. You are to disregard the discussions between counsel.
 Id. at 224.
Although we agree with appellant defense counsel's statement was not improper and the prosecutor's statement was improper, we find the trial court's curative instruction was sufficient to counterbalance any influence caused by the prosecutor's remark.
Assignment of Error II is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, P.J., Hoffman, J. and Reader, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.